UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KENNETH RATLIFF** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 05-0927** |
| **BURL CAIN, WARDEN** | * | **SECTION: "B"(6)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

**I. PROCEDURAL HISTORY**

On September 22, 1998, petitioner, Kenneth Ratcliff, a prisoner incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was found guilty, following trial by

jury, of first degree robbery.[1]  On October 22, 1998, petitioner was sentenced as a multiple offender to life imprisonment.[2]

Pursuant to petitioner's appeal, on December 13, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.  *State v. Ratcliff*, 793 So.2d 569 (La. App. 4 Cir. 2000) (unpublished opinion).[3]  On November 21, 2001, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his first degree robbery conviction and life sentence final.  *State v. Ratcliff*, 802 So.2d 625 (La. 2001).

On July 23, 2002, petitioner filed an application for post-conviction relief with the state district court.[4]  On September 24, 2004, the state district court denied petitioner's post-conviction application.[5]  On December 30, 2004, the Louisiana Fourth Circuit Court of Appeal, finding "no error in the trial court's judgment", likewise denied petitioner post-

---

[1] *See* State rec., vol. 4 of 4, docket master, p. 1.  Petitioner was indicted on the charge of armed robbery, but was found guilty on the lesser charge of first degree robbery.

[2] *See* State rec., vol. 4 of 4, docket master, p. 2.

[3] Copies of the Louisiana Fourth Circuit's unpublished opinion are contained in the State rec., vols. 1 and 4 of 4.

[4] A copy of petitioner's post-conviction application is contained in the State rec., vol. 1 of 4.  The court attributes July 23, 2002 as the filing date of petitioner's post-conviction application based upon the fact that this is the date petitioner signed his post-conviction application.

[5] *See* State rec., vol. 4 of 4, docket master, p. 3.

conviction relief.[6] Petitioner did not file, in connection with his pursuit of post-conviction relief, a writ application with the Louisiana Supreme Court.

Petitioner signed and filed the instant action for federal habeas relief on February 10, 2005.[7] In its original response (rec. doc. # 17), the State contended that the instant petition was untimely. However, based upon the court's calculation, as reflected in its Order (rec. doc. # 20), approximately only 160 days of petitioner's 365-day prescriptive period expired before he filed the instant action. Accordingly, the State was ordered to file a supplemental response addressing the merits of petitioner's claims.

The State, in its supplemental response (rec. doc. # 35), contests whether or not petitioner, with respect to some of his claims, has exhausted his state court remedies, as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). However, under the provisions of 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of

---

[6] A copy of the Louisiana Fourth Circuit's decision, *State v. Ratcliff*, No. 2004-K-1903 (La. App. 4 Cir. 2004) (unpublished decision), is contained in the State rec., vol. 4 of 4.

[7] *See* Federal rec., doc. # 1. This February 10, 2005 filing date was ascertained via the court's use of the "mailbox rule." Under this rule, a pleading filed by a prisoner acting *pro se* is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Accordingly, despite petitioner's alleged failure to exhaust his state court remedies with respect to particular claims, this court shall, nevertheless, review the applicable facts and address the merits of petitioner's claims, to the extent the court can ascertain the content of said claims.[8]

## II. FACTS[9]

Muronda Landry testified that she was employed at Circle K, 839 Esplanade Avenue, on June 28, 1998. Landry stated that the petitioner, Kenneth Ratcliff, walked in, then proceeded to meander around the store, waiting for two customers to leave.[10] Once the customers had left, Landry testified that Ratcliff unzipped the blue overalls he was wearing, revealing that he had a gun in his possession.[11] Thereafter, Landry stated that Ratcliff grabbed her, threw her down, and ultimately took her necklace and earrings. During the

---

[8] Review of petitioner's pleadings reflect that they are confusing and unintelligible, containing rambling, vague, and often incomprehensible allegations.

[9] The facts are taken from the Louisiana Fourth Circuit Court of Appeal's direct appeal decision, *State v. Ratcliff*, 793 So.2d 569 (La. App. 4 Cir. 2000) (unpublished opinion), along with this court's review of the trial transcript.

[10] Based, in part, upon a videotape of the incident which was played for the jury, along with the introduction of two still photographs, the parties stipulated to the fact that Ratcliff was the man who had entered the store.

[11] According to Landry, the gun was "sticking out" from his "pants holster". (*See* State rec., vol. 2 of 4, trial transcript at p. 13, lines 31-32 and p. 14, lines 1-3). Landry, however, merely saw the gun, admitting that Ratcliff never pointed the gun at her or threatened her with it. (*See* State rec., vol. 2 of 4, trial transcript at p. 20, lines 8-25).

scuffle between the two, "papers" fell out of Ratcliff's overalls which Landry turned over to police. Landry later identified Ratcliff in a photographic lineup.

New Orleans Police Officer Jon Steele testified that he arrived at the Circle K in response to Landry's call to police. He testified that Landry had sustained a "fingernail scratch" as a result of her scuffle with the assailant. Steele further stated that he collected from Landry the "papers" which the assailant had left behind.

New Orleans Police Detective Ronald Puigh testified that with the benefit of the "papers" which the perpetrator left behind, he was able to compile a photographic lineup. Landry chose Ratcliff's picture from this lineup. Ratcliff was then arrested and the place where he had been living, 1865 North Galvez Street, was searched. No property was recovered from the search.

Ratcliff testified at trial that Landry falsely accused him of shoplifting, then proceeded to hit him with a "pricing gun" and rummage through his pockets. Ratcliff admitted that he, in turn, hit Landry. He further admitted that he had two prior drug convictions.

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for

questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

## IV. ANALYSIS

### A. Withholding of Exculpatory Evidence

Petitioner argues that the State withheld exculpatory evidence in the form of the victim's "9-1-1" telephone call to police. According to petitioner, the "9-1-1" call would have refuted the victim's trial testimony to the effect that the perpetrator had a gun and the police report to the effect that it represented that the victim informed that the perpetrator had a gun.

"The prosecution's suppression of evidence favorable to the accused violates the Due Process Clause if the evidence is material either to guilt or to punishment." *Kopycinski v. Scott*, 64 F.3d 223, 225 (5th Cir. 1995), citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Under *Brady* and its progeny, the prosecution is required to disclose to the defense both exculpatory evidence and evidence that would be useful for impeachment. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196; *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Bagley*, 473 U.S. 667, 675-76, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Thus, to prove a constitutional violation as contemplated under *Brady*, there must be a suppression of evidence which is both favorable to the accused, in terms of being exculpatory and/or useful for impeachment purposes, and material to his or her guilt or punishment. Materiality is established "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of

the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (quotation and citation omitted).

In the instant matter, there is no evidence reflecting that the victim, Muronda Landry, in reporting the crime to police via a "9-1-1" telephone call, informed whether or not the perpetrator had a gun. The victim was not questioned about and did not offer testimony regarding the content of her "9-1-1" call, merely stating that "she called the police".[12] The responding police officers, Officer Jon Steele and Detective Ronald Puigh, likewise were not questioned about and did not testify regarding what information was relayed to the police dispatch officer via Ms. Landry's "9-1-1" call.[13] Further, a videotape of the incident was taken and played for jurors. Based upon their viewing of the videotape, jurors were in a position to judge for themselves whether or not petitioner was armed when he entered the Circle K. Accordingly, the court finds that the victim's "9-1-1" telephone call cannot properly be categorized as material, and therefore, does not constitute *Brady* material. Accordingly, the alleged suppression of a transcribed copy of the telephone call does not constitute a constitutional violation.

---

[12]*See* State rec., vol. 2 of 4, trial transcript at p. 14, line 15.

[13]Interestingly, only petitioner offered testimony regarding what Landry allegedly stated when she placed her "9-1-1" call to police. Petitioner, however, did not testify that Landry made no mention of a gun when she contacted police. Instead, he testified as follows:
    Q. Were you there when she called on the phone?
    A. Yes. I still was on the premises when she placed her 911 call. Her 911 call stated that she was being robbed **at gunpoint**.... [Emphasis added.]
*See* State rec., vol. 2 of 4, trial transcript at p. 43, lines 26-29.

Petitioner also asserts that the State's failure to search its files for exculpatory evidence constituted a *Brady* violation. However, such a speculative claim, without any specifics regarding the alleged exculpatory evidence, is insufficient for purposes of setting forth a viable claim under *Brady*. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir.), *cert. denied*, 531 U.S. 957, 121 S.Ct. 380, 148 L.Ed.2d 293 (2000) (citations omitted) ("Allegations that are merely 'conclusionary' or are purely speculative cannot support a *Brady* claim.").

### B. Insufficiency of Evidence

Petitioner also argues that insufficient evidence was presented to support his conviction. The basis of petitioner's argument is the claim that insufficient evidence was submitted to show that he was in possession of a gun.

Petitioner raised his insufficiency of evidence argument on direct appeal. The Louisiana Fourth Circuit Court of Appeal, in addressing the matter, first examined the applicable law, noting: "In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Jacobs*, 504 So.2d 817 (La. 1987)." *Ratcliff*, 793 So.2d 569.

The Louisiana Fourth Circuit next examined the elements of the offense:

> The elements of first degree robbery are set forth in R.S. 14:64.1 which provides in pertinent part:
>> First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.

*Id.*

As review of the above elements reflects, there is no requirement, for purposes of proving a defendant guilty of first degree robbery, that a showing be made that the defendant actually possessed a gun or some other type of dangerous weapon. Instead, a showing must be made that the defendant led the victim to reasonably believe that he was armed with a dangerous weapon.

In this case, as the Louisiana Fourth Circuit noted, "the victim said that the defendant unzipped his jacket revealing a gun.[14] He [then] scuffled with [the victim] and took her earrings and chain." *Id*. (footnote added). Accordingly, the state appellate court concluded that the evidence was sufficient to support petitioner's first degree robbery conviction.

Based upon the above, it is clear that the state court properly examined the elements necessary to prove first degree robbery, and determined, examining the evidence

---

[14]Specifically, Landry, the victim, testified:
>Q. What did you see when he unzipped his overalls?
>A. I seen the gun sticking out.

*See* State rec., vol. 2 of 4, trial transcript at p. 13, lines 31-32.

10

in a light most favorable to the prosecution, that all of the elements had been proven. Accordingly, the court finds that the Louisiana Fourth Circuit Court of Appeal did not unreasonably apply the applicable law enunciated by the Supreme Court in *Jackson, supra*.

### C.  Illegal Seizure of Evidence

Petitioner next complains, in various parts of his habeas application, about the alleged illegal retrieval of a gun from the home of Richard Baxter. Petitioner claims that Officer Steele "illegally seized" the gun and placed it into evidence.[15] However, review of the trial transcript reflects that no gun was introduced and/or placed into evidence in connection with the State's case against petitioner. A review of Officer's Steele direct and cross-examination testimony reveals no mention of any gun. Further, Detective Puigh, who supervised the only search conducted in connection with the incident at issue, testified that no property was recovered.[16] Accordingly, petitioner's claim of an alleged illegal gun seizure is without merit.

### D.  Ineffective Assistance of Counsel

Petitioner's last two claims concern his alleged failure to receive effective assistance of counsel. The seminal Supreme Court decision regarding ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d

---

[15]*See* Federal rec., doc. # 1, petition at p. 6, and supporting memorandum at pp. 8, 9, 16 and 19.

[16]*See* State rec., vol. 2 of 4, trial transcript at p. 36, lines 10-15.

674 (1984), wherein the Court held that in order to prove that counsel was ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Petitioner argues that appointed counsel, Joseph Meyer, was ineffective due to his failure to object to the admission of the videotape of the incident at issue. Petitioner, however, provides no basis upon which any objection could have been raised. Petitioner admitted at trial that the store, the Circle K, contained surveillance cameras.

> Q. Okay. Did you know there were cameras in that store?
> A. Yes; I am very – I'm very aware of that particular fact. All Circle K's, all convenience – small convenience stores have surveillance cameras in them.[17]

---

[17]*See* State rec., vol. 2 of 4, trial transcript at p. 45, lines 18-21.

Petitioner further admitted that he was in the Circle K on the date in question,[18] and that he was the person depicted on the videotape, pointing out to jurors, upon the prosecution's re-play of the videotape, where he was located in juxtaposition to the victim, Ms. Landry.[19] Since no valid ground for objection existed, counsel's failure to object cannot render his performance unconstitutionally deficient.

Finally, petitioner claims that he was unconstitutionally denied his choice of counsel, David Belfield, by virtue of the trial court's refusal to grant a continuance, thereby forcing him to proceed to trial with appointed counsel, Joseph Meyer. A review of the pertinent record reveals that on August 19, 1998, petitioner, accompanied by court appointed counsel, Joseph Meyer, appeared for arraignment.[20] On August 26, 1998, petitioner, accompanied by hired, private counsel, Iona Renfroe, appeared for a hearing in connection with his motion to suppress identification.[21] Thereafter, Ms. Renfroe withdrew from the case and petitioner, on September 9, 1998, appeared in court for trial without counsel. Mr. Meyer was reappointed to represent petitioner and the trial was continued and reset for September

---

[18] *See* State rec., vol. 2 of 4, trial transcript at p. 42, lines 17-19.

[19] *See* State rec., vol. 2 of 4, trial transcript at p. 47, lines 13-32; p. 49, lines 20-30.

[20] *See* State rec., vol. 4 of 4, docket master, p. 1.

[21] Petitioner's motion to suppress was denied by the state trial court. A copy of the transcript of petitioner's August 26, 1998 hearing is contained in the State rec., vol. 2 of 4.

21, 1998.[22]  On September 21, 1998, trial was again continued, but only for one day, until September 22, 1998.[23]

On September 22, 1998, petitioner, accompanied by Mr. Meyer, appeared before the court for trial.  Before trial commenced, however, Mr. Meyer informed: "Just one thing on the record.  Mr. Ratcliff wants to put on the record that he – he tells me he has private counsel, Mr. Belfield.  He wants me to inform this Court of that, which I am now doing."[24]  In response, the trial court stated:

> No one's ever been here on your behalf....  No one's ever been here to say they represent you in this case.  Mr. Belfield, I believe – Mr. Meyer arraigned you on August 19th.  Ms. Renfroe came in and signed the record on August 26th.  Ms. Renfroe did the motions for you at that time.  The matter was set for trial on September 9th with Ms. Renfroe.  Ms. Renfroe indicated to us that she was no longer your lawyer, she was not the attorney of record, she withdrew from the case.  No one has come in here to tell me they represent you at all.  Mr. Meyer and Ms. Renfroe have been the only ones, and Ms. Renfroe came in the courtroom and said she did not represent you.
> I will note your objection though to proceeding to trial with a public defender, but no one has come into this courtroom and signed this record indicating that they represent you except Mr. Meyer, okay?[25]

Thereafter, the matter proceeded to trial and petitioner was convicted of first degree robbery.

---

[22]*See* State rec., vol. 4 of 4, docket master, p. 1.

[23]*See* State rec., vol. 4 of 4, docket master, p. 1.

[24]*See* State rec., vol. 2 of 4, trial transcript at p. 5, lines 10-14.

[25]*See* State rec., vol. 2 of 4, trial transcript at p. 5, lines 15-32.

Following petitioner's conviction, Mr. Belfield filed, on behalf of petitioner, a motion for new trial wherein he raised the following points:

> 2. The defendant was denied the effective assistance of counsel in that the appointed counsel did not have adequate opportunity to meet with and discuss the facts and circumstances involved in the case with the defendant. Additionally, defendant did not have an opportunity to review the evidence, particularly the contents of the videotape, with defense counsel prior to trial in order that a defense strategy could be formulated.
>
> 3. The defendant hired Attorney David Belfield III to represent him at trial and was denied the opportunity to have counsel of his choosing for representation. Defense counsel attempted to sign the record in the case but was informed that the record was not available in the record room and the record was not in the court. Attorney David Belfield informed the court personnel that he as the attorney of record and had attempted to sign the record but was informed that the record was misplaced or could not be located by the clerk's office. Attorney Iona Renfroe, who represented the defendant at the motion hearing informed this counsel that she would forward them to me upon receipt. The next communication that counsel received from the family was that a trial had been conducted and that the defendant was convicted.

*Ratcliff*, 793 So.2d 569.

In response to petitioner's motion for a new trial, the state district court conducted a hearing at which Belfield "testified to the same facts listed in the motion [for new trial]", stating that "he was first contacted by the defendant's family one or two days prior to the scheduled start of trial [on] September 9, 1998", but was scheduled to be "in

15

Alexandria [on] that day." *Id.*[26] Following said hearing, the trial court denied petitioner's motion for new trial, reasoning:

>  Mr. Ratcliff first appeared in this court on August 19, 1998 for arraignment. He entered a plea of not guilty at that time. On August 19th, he indicated to the Court that he could not afford counsel, he was in jail, and the charge was that of armed robbery. Mr. Meyer was then appointed to represent Mr. Ratcliff and the matter was set for motion hearings on August 26th.
> On August 26th for the motion hearings, Ms. Renfroe appeared in court on behalf of Mr. Ratcliff and said that she now represented Mr. Ratcliff. Mr. Meyer, as I understand, had received the police report and other information in connection with this case on the 26th and was prepared to proceed with the motions. The motions that applied in this matter were a motion to suppress the identification and the Court, on its own motion, filed a motion for a preliminary hearing. Those motions were heard on August 26, 1998 with Ms. Renfroe. The motions were concluded. The matter was set for trial then in September.
>
> On the first setting for the trial in September, no one appeared on behalf of Mr. Ratcliff for trial. Ms. Renfroe then indicated to the Court that she was not counsel for Mr. Ratcliff and no one appeared in the court on behalf of Mr. Ratcliff on the September trial setting. He did not indicate – there was no one in court, no one phoned the Court to indicate that he or she represented [Mr. Ratcliff]. Therefore, based on the absence of counsel – Mr. Meyer, I will also add for the record, was present during those motion hearings in August in the courtroom. He comes here, is assigned here and he works here every day on Monday through Thursday, on the motion and trial dates.
> At that time, Mr. Meyer was then reappointed to represent Mr. Ratcliff and the trial then proceeded in September of 1998. Mr. Ratcliff, as I said, was charged with the offense of armed robbery and the jury returned a verdict of guilty of the offense of first degree robbery.
> The Court is aware of the facts of this particular case because I might add they were rather [a] strange set of facts.... Mr. Ratcliff was not only caught on videotape whereby he was identified as the person responsible for this conduct, but in a rather strange twist of events, there was [a] fight, a scuffle,

---

[26]A copy of the state appellate court's unpublished opinion is contained in the State rec., vols. 1 and 3 of 4.

> between Mr. Ratcliff and the female that worked behind the counter at the convenience store, and Mr. Ratcliff took the stand and ... indicated that he was there to purchase something and for no apparent reason, the lady that worked behind the counter attacked him viciously and maliciously, and the lady had been asked if she had ever done this before. She said she'd never done that before.... I believe the jurors had a difficult time in accepting the story of Mr. Ratcliff and they found him ... guilty of the lesser charge of first degree robbery....
>
> I am not prepared to say that Mr. Ratcliff did not receive a fair trial. He did testify on his behalf. I understand that was against the advice of counsel because the background of Mr. Ratcliff would come out. He did testify, he did give his version of the events. The jury listened to them and the jury sided with the victim and found him guilty, albeit of a lesser charge of first degree robbery.[27]

The United States Supreme Court recently reiterated that "[t]he Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right... to have the Assistance of Counsel for his defence.' We have previously held that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him. *See Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)." *United States v. Gonzalez-Lopez*, _ U.S. _, 126 S.Ct. 2557, 2561, 165 L.Ed.2d 409 (2006) (citation omitted). The Court warned, however, that "the right to counsel of choice 'is circumscribed in several important respects.' *Wheat*, *supra*, at 159, 108 S.Ct. 1692." *Id.*

---

[27] *See* State rec., vol. 2 of 4, transcript of November 6, 1998 hearing on motion for new trial, pp. 8-11.

17

One respect by which a defendant's right to counsel of choice is circumscribed is the wide latitude afforded to trial judges in scheduling trials. As the Court observed in *Morris v. Slappy*, 461 U.S. 1, 11-12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983) (quotation omitted):

> Not the least of [trial judges'] problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel.

In rejecting the instant claim, the Louisiana Fourth Circuit Court of Appeal reviewed applicable state law which is comparable to the above-referenced Supreme Court law.

> "[A defendant's] right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice." [*State v. Jones*, 707 So.2d 975 (La. 1998).] And, "[t]he accused's unquestioned right to legal representation at his trial cannot be manipulated by him, by attempts at last-minute substitution or otherwise, so as to secure unwarranted delays or otherwise obstruct the orderly administration of justice.

*Ratcliff*, 793 So.2d 569 (citation and quotation omitted). Thereafter, the state appellate court determined that while "an arbitrary denial of counsel of choice, made without any regard for the circumstances of the particular case, is a constitutional violation", in this instance, "the denial of counsel of choice does not appear to have been arbitrary." *Id*. (quotation omitted).

18

The above determination on the part of the Louisiana Fourth Circuit was based, in part, upon the court's observation that petitioner's "case was set for trial on two occasions before it actually went to trial" and that it was not until the third trial setting "that the trial court [first] heard of Mr. Belfield". Further, despite Mr. Belfield's testimony to the effect that he did "everything in his power" to inform the court that he had been hired as counsel for defendant, the court observed:

> A review of the record reflects that Mr. Belfield did not file a notice of intent to be attorney of record or a motion for continuance. We also note that Mr. Belfield did not represent the defendant at the multiple bill hearing; Mr. Meyer represented the defendant. Also, after filing the motion for new trial, Mr. Belfield did not appear at a hearing May 29, 1998, because of a "family emergency," and [did not] appear for another hearing November 5, 1998.

*Ratcliff*, 793 So.2d 569.

Based upon the above, the court finds that the Louisiana Fourth Circuit's rejection of petitioner's claim, that he was unconstitutionally denied his choice of counsel, does not represent an unreasonable application of Supreme Court law to the facts of this case. Accordingly, petitioner is not entitled to federal habeas corpus relief.

### RECOMMENDATION

It is therefore **RECOMMENDED** that the instant habeas corpus petition be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __13th__ day of _____November_____, 2006.

                                                                            _____
                                                                            LOUIS MOORE, JR.
                                                                            United States Magistrate Judge